Good morning, Your Honor. Allow me to introduce myself. My name is Scott Hubbard. I represent the appellant and appellee Chris Kohler. I know the court's read my briefs and is familiar with the issues. This is a cross-appeal, so the defense also has issues of their own. Unless the court has any questions for me, I'd like to reserve the rest of my time. Do you think a panel of the Ninth Circuit composed of one out-of-circuit district judge would reverse the attorney on the attorney's fees issue? I'm sorry, what was that, Your Honor? Now I see the other side. Now I see the other side. I realize the question directed at them. All right. No questions? Thank you. Good morning. John Mears, Seifarth Shaw for Eddie Bauer. I'm not sure if the court would like us to start on the attorney's fees issue or... You can start. I'm going to ask you the question at some point. Okay. Let me, while we were addressing it and the issue was fresh in the court's mind, speak to the 48-inch bench issue. Our case was unique in that we did have expert testimony on the value of a 60-inch bench. We had a quadriplegic expert, Kim Blackseth, who said that with a dressing room that is 60 inches in length and a bench that is 48 inches in length, if someone was going to, I'm sorry, with a bench that's 48 inches in length and a dressing room that's 60 inches in length, with a person that tries to do a transfer, they could get caught in those extra 12 inches, and they could actually be stuck on the floor, and so it would be more dangerous to have a 48-inch bench. So we should rule in your favor and against Flava? Yes. I... No, no, you don't think that. I'm sorry, I... I said we should rule in your favor and against Flava, because they did not put that in the record. I don't want to speak to how the court should rule against Flava, but our case was unique in that when Mr. Hubbard was speaking about there is no evidence in the record about the value of a 60-inch bench, there is evidence in our record about the value of a 60-inch on the statutory construction, the shell versus at least issue. The ADA is meant to be a minimum, and very many compliant structures exceed what the ADA requires. For instance, the ADA says there has to be an international symbol of accessibility on the outside of a building, the symbol with the wheelchair, that is six inches large. If a business had a 12-inch sign showing the international symbol of accessibility, Mr. Hubbard would argue that that violates the statute, because the statute says shell. With respect to the number of accessible lavatories or parking spaces, if a business exceeded those, they would be technically beyond what the ADA requirements... Well, you know, he's not saying that every time you provide something, you can't provide more. He's saying that in a regulation, which sometimes says at least and sometimes doesn't, there's a difference, and there's a reason for that difference. So, I mean, you have a pretty good argument. I don't know why you would try to make an argument like this, which really doesn't answer the argument that if in a particular regulation, sometimes it says at least, sometimes it doesn't. We read the regulation, this is the argument, you read the regulation as meaning that there's a reason that they omitted language that they knew how to use when they meant at least. Well, but your honor, the same ADA regulations call for an equivalent facilitation, which says that a facilitation of equal or greater access, equal or greater, is still compliant. But the question is, is this greater access to make it so that there is no side space? Maybe if you're experts, right, and the side space is of no use, then there's no problem. I mean, if the space serves no purpose, then I think you would prevail. If the space served a purpose, and it did make it possible to have the diagonal shift, then maybe there would be, then there's an argument. But if you're right, the 12 inches could serve no purpose at all. And in our case, your honor, there's no dispute that we're subject to the earlier 1991 specifications, which do not require a diagonal transfer. That's a different question. Well, it speaks to the answer of, is there a purpose? Yes, is there a purpose here? And there is no purpose under our regulations, because the regulations we're subject to only provide for a parallel transfer. Well, that's your interpretation of the regulation. At one point in the regulation, they say if you give the 16 inches, it will permit the parallel transfer. It doesn't say that there will be no diagonal transfer. I mean, you may read the regulation saying it's not concerned with diagonal transfers. You could also say it's not necessary, because it provides that you have to have the space for it, if the 12 inches would serve that purpose. But I think you sound like a prosecutor. You know, you sort of over-argue your case. I'm sorry, your honor. Let me move to the other barriers in our case. The next one was the height of the counter. And the argument by Mr. Hubbard is that estimates are allowable in order to determine if there's a violation. But the district court, in our case, did accept the estimates, but found that the estimates were not as credible as the other testimony. What was the other testimony? Testimony was that plaintiff, Mr. Kohler, had an expert, and his own expert did not state that the counter was... How about your expert? Our experts... Or lay witness. Our lay witnesses and experts did testify that the counter was compliant, and therefore... How many inches? The counter had a 36-inch cutout, which allowed for transfer of materials, and 36 inches is the height required under the ADAC. And that was... I missed that. I just... Yes. Plaintiff's own expert report stated that the counter was compliant, and therefore, in our case, the court did, under the recent decision in Strong, consider the estimates of the person in the wheelchair, but found that, as a factual matter, there was more credible testimony regarding the height. And that's exactly what... Let me get the facts straight. There was testimony that the district judge considered by the plaintiff that the counter was 39 feet high or inches high. There's no question there was that testimony. Now, what was the other testimony, that it was 39 inches high, but there were cutouts? The other testimony was in two forms, Your Honor. There was testimony in the report by plaintiff's expert that there was another counter that was 36 inches high, and there was no testimony in plaintiff's expert's report that the counter being complained of was 39 inches high. And so... So there was no testimonies from plaintiff's experts on the height of the counter being challenged? No. And plaintiff's expert did an inspection of the entire facility and noted what he thought were other violations, but did not note any problem with the height of the counter. And so the court found that, based on the factual record and the credibility of witnesses, that the counter was... Did the plaintiff's expert say anything about the counter at issue here? Plaintiff's expert noted that there was a cutout counter and that the cutout counter was 36 inches. The entire counter? What is a cutout counter? So, for instance, if this lectern is the counter and there is a drop part of it that is lower and then the higher counter continues, then there can be part of a counter that is lower. Maybe another visualization is a bank teller where they have a higher counter that the teller is behind and then a lower portion cutout where bank patrons can pass something through. So you say there's testimony that the counter that they're complaining of is not a solid 39 inches but that there's a cutout where it's 36 inches. There was a cutout of 36 and, just to clarify, Mr. Kohler never testified it was 39 inches. He provided vague testimony that he said it was too high. You mean he testified, but he had vague testimony? He testified that I'm in a wheelchair and I know how high my shoulders are in a wheelchair and I think the counter, based on the height of my shoulders, was too high. He didn't say I estimate. In any event, the district judge did not credit that testimony. Right? Yes. Does that mean it did not credit that that is establishing the site? Well, the district judge, as in strong case, weighed the testimony from different sources. The estimate from Mr. Kohler and then the other evidence in the record. Let's return to find out what is the other evidence. Now, you say one of the other evidence is plaintiff's expert who says there was a cutout in the counter. Says there was a cutout in the counter. Okay. What's the other evidence? And the other evidence was the fact that plaintiff's expert did not testify that the other part of the counter was too high. Is all your evidence come from the plaintiff's expert? No.  who testified that there was a cutout part of the counter that was lower and our witnesses also testified that we had other forms of equivalent facilitation such as a complete break in the counter so that items could be passed through and a clipboard to be used if somebody needed a hard surface to sign a credit card receipt or a check. The clipboard, is that... can that be a permanent solution or can it only be a temporary solution? Well, it has been held to be an equivalent facilitation and an equivalent facilitation can be either permanent or temporary. An equivalent facilitation even in a compliance setting can be permanent. Some people, even if a counter is 36 inches high might still prefer to use a clipboard and so a business can still have alternative bases to... But if the clipboard is the only solution at least under California law is that sufficient to have a clipboard? Under California law there is no requirement that the equivalent facilitation only be temporary. In the regulations under Title 24 of the California Building Code you can provide for this type of equivalent facilitation and there is no requirement... Under the ADA, under the Justice Department guidelines that's not correct, is it? Under the Justice Department guidelines they've been interpreted to say that an equivalent facilitation can't be the only permanent facilitation but you can offer it as an additional facilitation on a permanent basis. Is it consistent with the ADA to require somebody in a wheelchair to use a clipboard or some other different portion of the counter? You know, the cut-out portion of the counter. Well, yes. In fact, the ADA provides for instance in supermarkets that you need to have one compliant check stand but they don't have to be compliant. The ADA provides that where you have multiple counters in a store you need to have one counter that is compliant in terms of a pay point counter but you can have other counters that are not compliant. How would you like to stand in a wheelchair behind somebody with 25 items and the other aisles are empty? It would still be equal access because a non-disabled person might have to stand behind 25 people. No, they wouldn't. You're right. Assuming the other aisles are open. There's nobody standing in line. The other person could go to the other aisle. The other person could go to the other aisle. The person in the wheelchair as we had testimony at this trial there is a policy to help those people personally and at Eddie Bauer that person would have been approached and would have had the items taken from him so that he wouldn't have to use the counter. Philosophically, that sort of goes to the question whether you have to use a particular counter. Why should you have to if you're in a wheelchair Why should you have to be at the mercy of the goodwill of the check-in person? Well, in this case the lowered counter was attached to the counter itself and so the person in a wheelchair would not have to be involved in any greater effort. They would already be at the same location. Are you familiar with a case called Chipotle? Yes. Yeah, I wondered I know I was on the panel and decided that and I didn't think about it until just now. It sounded very much like this case. There wasn't any lowered counter part. In Chipotle, as the court held that Chipotle offered what I believe the exact words were the quote Chipotle experience, close quote which meant that somebody who liked to see the food being prepared that the reason to go to the restaurant was to experience the clerk behind the counter actually preparing your food and being able to say I'd like more onions or more relish and that was the essence of going to Chipotle as the court said the Chipotle experience. The essence of going to Eddie Bauer is to buy There's no Eddie Bauer experience. The Eddie Bauer experience is high quality clothes not a specific counter. Tell us a little bit I know your time is coming to an end about attorney's fees. On the attorney's fees your honor the case that Mr. Hubbard relies on Strobeck addressed an earlier version of the California Disabled Persons Act and Strobeck said because the burden of proof is the same under the ADA and the California Disabled Persons Act that the ADA would Answer my question Should a panel of this court which includes a district judge from another circuit overrule the established circuit precedent? The answer to that is no. The answer to that is no but we're not talking about the circuit precedent we're talking about the California Supreme Court The California Supreme Court in interpreting the state statute held that it is a mandatory fee shifting But the preemption is On the preemption issue the court ruled on a different statute so we're not asking to overrule prior precedent because the prior precedent has been answered involved a different statute Alright thank you Would you address this argument about the lowering of the counter in the I don't know quite how to describe it but the area cut out thank you Fair enough I will I was actually going to be my lead off First if you look at F.E.R. 7 which is I'll just describe the court it's a picture of my client at at at Eddie Bauer There's no lowered counter He says that my expert witness didn't testified that that wasn't a barrier or My expert if you look at F.E.R. I just pulled it up If you look up at F.E.R. 10 you'll see that my client or my expert didn't testify They said that the expert report showed that this wasn't a barrier and it was a lowered counter If you look again at F.E.R. 11 you'll see that my expert report wasn't admitted into evidence primarily because it's hearsay The defense is representing Let me just understand because you're relying fairly heavily on your expert report It was not in evidence? No your honor F.E.R. Did anyone try to introduce it into evidence? I believe if memory serves that we that when the issue came up we moved to exclude it on the grounds that it's hearsay as well it is Your experts they tried to introduce you I believe I don't want to shoot from the hip your honor I would like permission on this point to research the background on the expert reports I can say generally speaking and by generally I mean always we move to exclude experts expert reports on the grounds that they're hearsay including ours Alright well maybe we just take deviate a minute from the ordinary I could ask counsel was the expert report that you were relying on in evidence? The expert report was in evidence it was referred to in the district court's opinion your honor he says that plaintiff's expert But was it in evidence? Was it admitted into the district court? I you know what if it was then I apologize but your honor I have no when I prepared my briefs and when I prepared for oral argument there was only one source of testimony regarding oh and if you look at the F.E.R. the proposed findings of facts and conclusions of law that the defense submitted which I have also attached in my further excerpts of record if you look on pages two or excuse me F.E.R. three and four you won't see any references to a lowered counter either that was that does concern me but the picture does not show a lowered counter a lowered counter but it shows the counter check out is that the only check out counter yes no I don't want to shoot from the hip on this one I try very hard to give an accurate representation no no I know I know I know I appreciate that but I I'm just trying to that picture does not show a check out counter but if there was one I say that my client testified that there was only one counter and it wasn't lowered he said and this is his observations was based off his lap which was 27 inches high his testimony and that the counter was 12 inches above that about a foot is his exact words and that he could rest his chin on it he also testified but the district judge does not have to credit him he can credit him your client being an honest person but not the height again if you look to the F.E.R. which I attached the judge did not exclude his testimony because he wasn't credible he excluded his testimony because opposing counsel represented based on the Strong v. Valdez district court opinions that disabled plaintiffs have to provide precise measurements that their personal observations are not sufficient and without expert testimony we could not prevail all three of which were shot down by this court in Valdez and I included both the pleading transcripts where they made that argument and the transcripts where they made that argument because I understand you don't have to have expert testimony but the finder of fact can can say that the evidence is not you know not credit the testimony if the court much like the three walls if the court ruled that he didn't find my client's testimony credible that would be one thing but the court didn't make that finding in this case in this case the court was presented with a legal argument that as a matter of law his testimony should be excluded and that's that's the rub let me see here again if you look to the pleadings that I provided you also see that that their expert did in fact testify that it was minimum forty eight inches minimum not a maximum or excuse me forty eight inches minimum I'm shifting to the equivalent facilitation argued again my apologies you'll see that the expert testified that that the shall in the regs for dressing room benches was a minimum forty eight inches not an exactly so and the factual while his client his expert did testify that it was dangerous there was no explanation given why other than people could slip out so whether or not that as a matter of law rises to the level of equivalent facilitation defense establishing one I dare say no because then once again  to my original position if they could say oh it's dangerous to comply with the standards approved by the Department of Justice after three years of hearings and and whatever then that puts the that puts disabled individuals in a precarious position and defense businesses higher than the department uh... again our client was the only well that that might be okay boy I sure hope it isn't your honor because that's gotten the ADA will be a dead letter at that point if what happens if if defendants could ignore binding Department of Justice regulation that's not quite what you said you said that that that that businesses would be in a greater okay allow me to put it this way the Department of Justice goes through an entire rigamen roll where after years and hearings and comments from the public they come up with the 2010 standards or any standards for that matter and a defendant can ignore those standards with an expert witness saying that it is dangerous to comply with those standards that's some pretty heavy that's a pretty heavy conclusion to draw uh... let's see here what else should I take uh... does the court want me to discuss the attorney fee issue because that was pretty well addressed in my answering brief now uh... let's see here look at the defense testimony regarding his uh... regarding the height of the counter was again unrebutted so it's one thing for the judge to say that I'm gonna make a credibility determination and the plaintiff's testimony is incredible I'm believing the defendant no this was judge his was the only testimony on the counter height the defense offered nothing but you don't have to accept I mean it's blackwater law you don't have to accept don't and once again it comes back to my original point if he said I don't find it incredible different argument uh... one last point I want to make is that uh... equivalent facilitation under california law by definition requires a showing of an unreasonable hardship you can't just ignore california standards and give the defense a clipboard and not provide a lower counter unless there's an unreasonable hardship and that  here in any event there's a different standard under the ADA as to whether a clipboard is sufficient as a temporary or a permanent solution they are and I think judge uh... analysis and I believe the case is called Wayland I think the district court didn't reach that question did it no he did not so that any other questions thank you thank you case just argued will be submitted uh... uh... uh... uh... uh... did have uh... some of the evidentiary issues uh... would you give the state to the record to the clerk and copy to your fellow counsel your honor may I ask a request could he do it in a twenty H A letter it might uh... will let you both submit citations to the record on the question of what's in the record if you'll do it within the next three days and your honor I want to since I have opposing counsel here if I'm wrong then I do want to apologize in advance so just because I like to be on it I like to be accurate when I make representations that's perfectly obvious thank you thank you alright cases will be submitted that was eddie bauer we're now up to call
judges: Motz, Reinhardt, Gould